Good morning, Your Honors, and may it please the Court, my name is John Drake. I'm here on behalf of the Appellant, Secretary of the Interior, Deb Haaland. I'm going to attempt to reserve about four minutes of my time for rebuttal. Your Honors, this case is about limiting front pay to a temporary make-whole remedy consistent with this Court's precedent. The District Court awarded 11 years of front pay through O'Kell's retirement to the tune of about a million dollars. That award must be vacated for two reasons. First, the District Court overlooked Ms. O'Kell's undenied ability to find a comparable federal job. This Court's precedent makes clear that front pay must not extend beyond the point at which a plaintiff can secure a comparable job. O'Kell received two offers of federal employment before the case went to trial, the first of which was extended a mere six months after she left the Bureau of Reclamation. The District Court effectively ignored that evidence. Ms. O'Kell also requested, and the District Court awarded, injunctive relief that facilitates and expedites her return to the federal workforce. Ms. O'Kell insisted below that she was able to return to the federal workforce, that she wanted to return to the federal workforce, and that she would, in fact, return to the federal workforce if the District Court granted file-cleaning injunctive relief for that purpose. Now, the fact that Ms. O'Kell requested that relief and the fact that that relief was granted renders the 11-year front pay award completely untenable. So I want to ask about the job offers that she received. Well, one of them was revoked, correct? That's correct. The first job offer was revoked, and then the second one was distant. She resides in the Ephrata area, is that correct? Right. And the other one was somewhere in California and required a 45-minute commute and all sorts of other things. And we do have case law that suggests you don't have to accept a job that is distant like that. Is there any evidence of any other jobs she received, even within any reasonable range of Ephrata? Well, Your Honor, you're correct that the second of the two job offers was in Fort Irwin, California, the Barstow area. And, yes, that was unique in the sense that it required extensive travel to and from the installation that she would have worked at. However, I would note that the first job offer that she received with the Army Corps of Engineers was in West Virginia, and Ms. O'Kell actually accepted that job, was ready to go, to move, before that offer was revoked. And so on this record, I think it's safe to say that she did not receive that job. She applied to hundreds of jobs, correct? Well, she said over 100, yes. Do we have anything that says she didn't? Your Honor, her testimony was that she applied for... Exactly. Her testimony was that she applied for hundreds of jobs. And, basically, she potentially had one job offer, which also was distant. So, why wasn't the district court, under a clear error standard, entitled to basically make the assumption that she wouldn't be able to get a job? Well, Your Honor, I think the district court was entitled to make a finding to that effect. However, there was no finding made, and that is... So, you would want to remand, and then the judge would make that finding, most likely, based on the way he crafted the judgment, correct? Well, Your Honor, I don't think it's safe to make that assumption. We wouldn't make that determination. Correct, Your Honor. We would go back, and then the district court would decide what finding to make. Correct. On the record presented at trial, whether front pay was appropriate in light of her ability to obtain comparable employment, and, if so, for how long that award should extend. And so, on the other issue that is disputed is the 11 versus 12. You know, even the district court said in the middle of trial, we're arguing over this, and here we are in the middle of trial. And then, ultimately, by adopting the expert report, isn't that a way of finding an effect about GS-12? Yes, Your Honor. You're correct that the district court viewed that GS-11 versus GS-12 issue as a, quote, collateral issue in the case. We respectfully disagree. It was an error that impacted the judgment to the tune of about $210,000. However, even though the standard is deferential, clear error, it does meet that standard, because there was undisputed testimony offered by the Bureau of Reclamation's chief human capital officer, which explained in very clear detail that had Ms. O'Kell been selected for that project manager position, she could only have been hired at that lower GS-11 salary rate, as a matter of. . . The other issue that I saw in this, and maybe you can comment on that, is that the district court relied on the economist, and the economist relied on a purported concession made by the government in the pleadings, which wasn't, to my way of reading it, a concession at all. So can you comment on that? Yes, Your Honor. I think that's exactly right, that the plaintiff's economist did simply assume that Ms. O'Kell would have been hired at the GS-12 level. However, that was inconsistent with the exhibits that Ms. O'Kell herself submitted at trial. And in the reply brief, there's also a concession, if you will, on the other side, that she was certified only at a GS-11. That's correct, Your Honor. And based on the way that these GS ratings work, she could only have been employed at a rating for which there was a certificate.  That's precisely correct, Your Honor. So if there are remand, you would want a finding, I take it, that would say that she's eligible only for GS-11. Correct, for purposes of both the back pay award and for purposes of the front pay award. Correct. I'd like to turn back to the duration of the front pay award, which is the main issue in the case. The starting point for evaluating the 11-year front pay award is this Court's decisions in Gotthard and Casino, cited in our briefing, and the Traxler v. Multnomah County case authored by Judge McEwen, which is cited in O'Kell's brief. Those cases make clear that front pay is a limited make-whole revenue. It's intended to bridge a temporary gap in employment from the time of trial until the plaintiff is able to find a comparable job. What's the standard of review on a front pay determination? Your Honor, the Court's decision to award front pay is reviewed for abuse of discretion. The facts on— We would have to find clear error? Respectfully, no, Your Honor. I think on this record, it is an abuse of discretion standard of review. The Traxler case does state that factual findings on which a front pay award is based are reviewed for clear error. However, in this case, there were no findings made. There is simply no record or no findings on which this Court could evaluate whether that was, in fact, an abuse of discretion. And so we're really talking about the decision to award front pay in the first instance. And if the case is remanded at that point, it will be a question of how much front pay, if any, Ms. O'Kell is entitled to. This was a bench trial, right? Correct. Did the Secretary, did the government seek findings of fact, conclusions of law? We did submit proposed findings and conclusions, yes. And what did the district court do with them? Those were not incorporated in any way. The other side did the same thing, I assume. Correct, Your Honor. The district court did draft its own findings and conclusions. It was not a matter of simply adopting one side or the other's proposed findings. I think it's fair to say that the district court had a much different view of the case than the government, and that's reflected in the findings. However, for purposes of damages, which is the only issue the government is appealing, there was very, very, very little treatment of this question of how long it would take O'Kell to find comparable employment. And it's, frankly, conspicuous because there were two offers of employment that she received prior to trial. And so those two offers were not mentioned at all in the court's findings and conclusions. Even after the government brought that to the court's attention in a Rule 59e motion to vacate the judgment, that based upon the two offers that she received and the fact the court had awarded equitable relief that facilitates and expedites her return to the federal workforce, that 11 years of front pay was a bridge too far. She had planned on retiring at 72. Is that what the record says? That was her testimony, and that was the court's finding, yes. Okay. And does the government dispute that that was her retirement plan? It was a disputed issue at trial, but for purposes of appeal, no, we don't dispute that she would retire at 72, yes. And so the critical point is that front pay is an alternative remedy. It's an alternative to the presumptive remedy of reinstatement. And reinstatement, of course, means that the plaintiff goes back to work for the defendant employer. And from that point forward, the plaintiff is working for the employer and earning her salary and earning her benefits. In the rare case in which reinstatement is not feasible, as here, the question becomes how long would it take for the plaintiff to find comparable employment, to be put back in a comparable position. And to borrow a sports analogy, the plaintiff in this circumstance becomes a free agent and can go work for any employer she chooses. And it is improper to award front pay through retirement, especially 11 years into the future, when the record clearly suggests that the plaintiff can find comparable employment sooner, much sooner. What do you do? I know there's not a specific finding with respect to parts of the reemployment, but we do have the court's finding that plaintiff mitigated her damages by exercising reasonable care and diligence in seeking reemployment after termination, even though she was ultimately unsuccessful. So is your position that the court needed to put a temporal scope into that finding in terms of the front pay? Precisely, Your Honor. Yes. That finding was limited to back pay, right? Essentially, the court found that she had mitigated her damages from the time she was terminated until the time of trial. Front pay, of course, is a different temporal scope. It's from the time of trial forward, and there was no finding made whatsoever on how long it would have taken the plaintiff to find comparable employment. I'll touch briefly on the burden of proof issue because I think that's important and I'll reserve my time. The burden of proof at that point flips, right? It's uncontested that in the back pay context, the defendant does have the burden of proving that the plaintiff failed to mitigate her damages. But from the time of trial forward, for purposes of any front pay award, if the plaintiff is going to argue that reinstatement is not an appropriate remedy and that she cannot continue to work for the defendant employer and earn her salary and benefits, the plaintiff has the burden of showing that front pay should be awarded in the first instance and the amount of time that the front pay should be awarded for, and here the evidence reflects that it would take at most about six months for that to occur. I'll reserve my remaining time. Thank you. Thank you. There's a switch there that you can lower the podium if you would like. You know, I am not even going to endeavor. I'll just leave it at this. Well, we can see you fine. Okay. As long as you can see me, I can see you. Okay. May it please the Court. Austi Galina on behalf of the Appellee with Riverside Law Group. As opposing counsel has aptly summarized this case, there are essentially two primary issues here on review. The first being the duration and reasonability of the front pay award, which does award front pay through the age of retirement. Here the assumption would be retirement at age 72. The second issue being the calculation of damages using the GS-12 versus the GS-11. It's important to note that the standard of review here is deferential. It is abuse of discretion for the award of the front pay, clear error for any underlying factual findings. And as this Court well knows, these standards of review are in place for a reason. This trial court sat in on an 11-day trial, which he noted in some of his frustration was only supposed to be a five-day trial. This was a long, protracted trial. The record is incredibly thick. I think he said at one point we're on day nine of a five-day trial, as I recall. That is correct. Yes, it was a protracted trial, which even had a fairly long lapse where the trial was held in abeyance for a period of time. The trial court took a lot of evidence, heard a lot of evidence. Well, counsel, isn't that all the more reason why the court needed to say more about front pay and the time frame of front pay? There really is no analysis. There's no mention of the federal offers. And maybe the court would have rejected that as being relevant, but there's not even any discussion of those factors, of how the fact that her record was wiped clean, how that would affect federal employment. There's just nothing there. Respectfully, Your Honor, I would disagree with that characterization. The trial court used shorthands, to be sure, but in adopting Eric West and stating that his testimony was thorough, his analysis was credible, that, I believe, allows this court to look through just the written findings of fact and conclusions of law, which are lengthy. This opinion needed to span not just damages, which is what we're hyper-focused on now, but also liability. That's what the court focused on was liability, and then there were like a page and three quarters on remedies or damages. And liability is no longer an issue. Yeah, so out goes liability. Obviously, that was hotly contested. I agree. But even if we take your point that he goes back to the West, and let's take the 11 versus 12, and West adopts the 12, if the evidence in the record doesn't support certification at 12, what does it matter that West adopted that? Well, we have, and I would direct the court to, once again, Traxler versus Multnomah County. There is a discussion in there about what the court can look at, and, yes, while a reasoned order is important and helpful, the court can also look at the trial court proceedings and inferences taken therefrom in order to determine why the trial court did what they did. In Traxler, there was a very truncated discussion on the trial court record where the entire substance of the analysis was no. That actually, I think, doesn't answer the question, which is how is it permissible to use GS-12? I think is the crux of it, if I don't mistake the question. Although West says it's 12, and then we also have the testimony, she can't be certified at 12. That's the actual testimony, something to that effect. Yes. Here, the trial court made clear why he did what he did. He stated on the record several times that he believed that the government needed to be held to its course of conduct throughout this litigation. That not only included the arguably deceptive, if not plain and flat-out admission that this was a GS-12 position. There was no admission. I don't understand where you find that. Certainly, in the answer to the complaint, there was an admission that she applied for it at 12. It was listed at 11 and 12. She applied for both. She was found qualified and certified at 11, not 12. And, in fact, your reply brief says that, that she was certified only at 11. That's true. However, evidence of her certification, and particularly the testimony to that effect from Nate Shimatsu, that was all something that came in. It was not indicated prior to trial that that would be a subject of dispute. It was not stated in the pretrial orders that were entered. It was not stated in the proposed findings of fact. In fact, the government's proposed findings of fact said she applied for this job. This was a GS-12 position, period. It did not say she's not qualified for a GS-12 position. The economic damages expert, all reports leading up to trial, the witness list, all of that stated that there was nothing talking about the GS-11 versus GS-12 issue. But the court permitted testimony on this dispute. It did not treat it as undisputed. So there had to be a finding, and it has to be supported by some evidence that makes it a permissible finding. While the court did allow the government to put on its case, he did so under protest repeatedly. He stated repeatedly. So what do we do with your statement in the reply brief that she was certified only as an 11? What do we do with that? Well, respectfully, Your Honor, this is an issue that was not fleshed out in the evidence. I would say there is evidence in the record to support a conclusion that she could have been hired at a 12. I would direct this court to ER-524. We don't have a finding. So here's the problem. We go through a whole trial, and I'm sympathetic. This was a big issue. There was, in your view, a bait-and-switch by the government, that we were going down this road, and then all of a sudden, boom, the issue pops up. But the district court says, okay, the issue pops up. We're going to have testimony. Don't we need to know from the district court one way or the other so we could apply the clear error standard as to what the finding is, the foundation on this? Respectfully, we do know from the district court why he did what he did. The district court explained at length why he was frustrated at the government's tactics, why he felt that this was not just the plaintiff who felt this way but also the court, that this was a bait-and-switch, that we were doing discovery on day nine of a five-day trial. But we still have to have evidence. Judges get frustrated often during trial because things don't always proceed in a linear fashion, of course, or as we would hope. But it is troubling that we have this conflicting testimony about 11 versus 12. They would say it's not even conflicting. It's definitive. But we don't know in the end what the judge thought. To the extent the question is whether there's evidence to support a finding of a GS-12, there is. There is an offer letter from another government agency offering Ms. Soquel a position at a GS-12 level. That is at 524, ER 524. We have some testimony from a non-expert lay witness who was admitted, allowed to testify, but very clearly, conditionally, the judge said, I'm going to let you put your case on. I don't know what I'm going to find as to this right now. That is not a concession on the trial court's part that this is a loud testimony, particularly as to an expert, which is essentially the capacity the government sought to offer him in. There, Mr. Shimatsu testified that the determination as to whether someone's a GS-11 or GS-12 is made by someone inside HR. There was some very fuzzy testimony as to what OPM does. At one point, the court characterized this as sort of a magic box that spits something out. But what we do know is what the court also cited in its conclusions of law and finding of fact, which is someone arguably less qualified with less experience was hired at the GS-12 level. Ms. Soquel, who Mr. Shimatsu testified would not have been able to be hired at a GS-11 level, was hired as a project manager at a GS-12 level by another government agency. So there is evidence. Which goes to the mitigation question, does it not? No, Your Honor, I don't believe so. I do believe that, yes, she did get hired. She is an outstanding federal employee, and she could have been hired. However, a large percentage of what the court and Eric West, which would be what the court adopted, based this determination on as far as mitigation goes, is the locality. So, yes, she was able to get another federal job. That was located in West Virginia. Right. She was ready to take it, though, far away or not. I mean, that was her choice to apply to that, presumably. Far away? Nobody held a gun to her head to do that, and she would have taken it had the record been wiped clean beforehand rather than after. Yes. However, that's not inconsistent with her testimony, which was cited, too, by Mr. West. Not only did she state that she was unable to travel due to health conditions, the other thing she stated is having been out of work for the amount of time that she had been, all the way up to trial, she was financially unable to relocate. And Eric West talked about the financial difficulties of relocating. This job she got way back in 2019, that was not the same as the jobs that she was facing in the market up to the point of trial and going forward. So that's not inconsistent, and the trial court was fully within its discretion, or it was not an issue of fact that is an issue of clear error for the court to conclude that she would be unable to relocate at this point in time when awarding front pay. And this SF-50 issue, the court did capably explain that the SF-50 issue was an equitable relief that restores her to a prior make-whole remedy of having not been retaliated against. It did not have anything to do with her ability to obtain future front pay. But as a practical matter, of course it affects her ability, because everybody wants to know what was your personnel record at your prior employment. And if you get a pristine file coming to you saying, great employee, no discipline, that has a different practical real-world effect than someone who has been fired, right? I agree with you. I think it is critical that she go forward in the world without evidence of the discrimination and retaliation in her personnel file. So it's kind of pointless if she doesn't need to bother finding work until retirement. Well, respectfully, that's not what the trial court found. The front pay award accounts for mitigation. This is not assuming that she will sit on her hands and not work. It accounts for the fact that she will get a job within weeks of the conclusion of trial in her hometown or near her hometown in Grant County at the rate that someone with an advanced professional degree could obtain reasonably in that location. So the CLEAN SF-50, it ought to help her achieve that goal. It was intended to be the delta. Yes, that's correct. CLEAN, her federal-type job versus what was available in that eastern Washington. That's correct. And the CLEAN SF-50 is not going to create a comparable federal job in Grant County. It's just not going to. So it may help her achieve that level of mitigation that the award already accounts for. It accounts that she's going to go right back to work just here in Grant County at a job she can get. And, again, there is no evidence in the record submitted by the government that there are any comparable federal jobs. And Eric West did testify that he hadn't seen any evidence, not only in Grant County but anywhere, of a job that would compensate Ms. O'Kell in the same way. There has been a suggestion that the court needed to enter more specific factual findings to support the front pay award. I would respectfully submit that this would be a new standard to which trial courts have never been held. There is no standard right now that says an award of front pay needs to be supported by any specific type of factual finding. The question is whether the court abused his discretion, whether he did something he was outside of his realm of ability to do. And the case law here is clear that a front pay award of this nature and duration is fully within the court's discretion as long as it's supported by the record, which here it very much is. We know that Ms. O'Kell intended to work until she was age 72. This is consistent with her own retirement stated plans as well as the average years of federal service for a federal employee. She had stated that she intended to work until that age, which granted is higher than the average age of 65 or 68, but she was new into this career. She was new into federal jobs. She wanted to qualify for federal loan forgiveness, and the trial court did not abuse his discretion by crediting that evidence and finding that she would work until age 72. Similarly, there's nothing to suggest that she could have mitigated with another federal job of similar compensation in Grant County. So the trial court did not abuse his discretion based on the length or duration of this front pay award. As to the GS-12, I do agree that there is some ambiguity in the record. However, it is clear what the court did. The court held the government to its longstanding duration of litigation in which this GS-11-12 issue was never raised as an issue for trial until after the court did a brief adjournment that the parties could go try to mediate. During that adjournment, they get an amended expert report, which has no analysis, just an extra column. It was dealt with in the answer to the complaint, though. The relevant, as I recall it, the paragraph said that the government admitted that she applied for GS-12 but denied the remainder of the allegations. So it was always there, wasn't it? No, and the complaint and the answer is the very first pleading. There is a duration of issues where this was never raised. We have answers to interrogatories. The summary judgment, which directly attacked Eric West's report, had nothing to do with the GS-11-12 issue. I'm calling from the judge that says I'm going to exclude this argument on GS-12. That's also my question. He could have said, government, you've engaged in bait and switch. I'm going to hold you to GS-12. But he did not. He said, it's open. Let's talk about it. Let's see what the proof is. And I haven't heard a whole lot of explanation supporting GS-12. I do think, I apologize, I'm over time, so I'll try to wrap this up quickly. We've given you these questions, so please, you have time to answer. I do think the trial court made it clear repeatedly on the record, this is a bait and switch, this is new evidence. He said, was this in the expert report? Was this disclosed in discovery? Did the parties know they would be trying this? I'm frustrated with this. I didn't think this was going to be an issue. While the court may not have said, I find that this is excluded, I hear by rule, it's very clear what the court did. We also have no discussion of Mr. Shimatsu, which indicates that the court didn't credit that testimony. Or didn't consider it. Right. As he should have. I think the court was very much within his discretion to choose not to consider that testimony. He was not certified as an expert. He was not disclosed as someone who would be testifying as a witness to the GS-11-12. And at the time of Mr. Shimatsu's testimony, the court expressed his skepticism at his capability to testify to those issues at that time. I think we have your argument in mind. Thank you. Thank you. Your Honors, there's been a lot of discussion about bait and switch on the GS-11-12 issue. There was no bait and switch. Judge McEwen, as you indicated, sometimes issues come up at trial that were not the focus at the beginning of the trial. Judge Hawkins, to your point, this was a bench trial. It proceeded over the course of two different calendar years. There was a lengthy break between the beginning of the trial, the mediation, and the second half of the trial. There was plenty of time for Ms. O'Kell to digest this GS-11 versus 12. Did the district judge use the expression bait and switch? Not that precise phrase, Your Honor. He clearly thought that the government was playing loose. Correct? I think more accurately, he was frustrated that the government was pursuing what it viewed as a collateral, what the court viewed as a collateral issue. And, again, it's not a collateral issue. It's a multi-hundreds-of-thousands-of-dollar issue. So he was frustrated that the parties were spending time on that. But in any event, there was no prejudice. And I would note that the expert report that was submitted prior to the resumption of the second half of trial was admitted without objection by Ms. O'Kell. You agree that this would be a different appellate review issue if the district court had said, Government, I'm tired of this tactic. You're out of school on GS-11 versus GS-12. But he didn't. That's precisely correct, yeah. But while we're on the topic of bait-and-switch, I think we need to refocus on the front pay award. Because going into trial and throughout the trial, again, Ms. O'Kell was very clear that she was able to return to federal employment, that she wanted to return to federal employment, and that she would, in fact, return to federal employment if she was granted injunctive relief. Now that we are on appeal with a windfall 11-year, $1 million front pay award, we have a bait-and-switch here. Ms. O'Kell is now telling you, this court, that she cannot return to federal employment. That is directly contrary to what— She's not telling us she can't. I mean, the determination was made there isn't any. Respectfully, Your Honor, I don't think there was that determination made. Well, maybe not a determination, but the evidence. Did you introduce any evidence, you being the government, that good heavens, look at USA Jobs. There's thousands of jobs she could have come. No, we did not, Your Honor, precisely because Ms. O'Kell was taking the position herself that there were comparable jobs available and that she would take one if the district court simply removed the references to discipline and termination from her file. And so, in conclusion, Your Honor, we would ask that the front pay award be vacated and that the case be remanded to the district court to determine whether front pay should be awarded in the first instance, based upon Ms. O'Kell's demonstrated ability to return to comparable employment, and that the back pay and front pay award be recalculated at the GS-11 level and that the offsetting tax consequences be reduced accordingly. Thank you. Thank you. Thank you both for your argument. Very interesting legal issues you've put in front of us. The case of O'Kell v. Holland is submitted.
judges: HAWKINS, GRABER, McKEOWN